1. RELIGIOUS CORPORATIONS.
    The Young Men's Christian Association, organized for the purpose of the improvement of the spiritual, mental, social, and physical condition of young men, the holding of religious meetings, and the teaching of Bible classes, is a religious corporation.

2. SAME.
    The Missionary Society of the Methodist Episcopal Church, whose objects, as described in its charter, are charitable and religious, and designed to promote Christian missions, is a religious corporation.

3. SAME—TRANSFER TAX.
    The Young Men's Christian Association and the Missionary Society of the Methodist Episcopal Church are exempt as religious corporations, under Tax Law 1896, § 221, from a transfer tax.

In the matter of the estate of Lucinda A. Watson. Appeal by state comptroller from an order assessing a transfer tax. Affirmed.

R. S. Johnson (C. R. Coville, of counsel), for state comptroller.
C. D. Prescott, for Young Men's Christian Ass'n of Rome, N. Y.
W. K. Harvey, for Missionary Soc. of Methodist Episcopal Church.

CALDER, S. This is an appeal by the state comptroller from a report of an appraiser and an order thereupon entered in the surrogate's office of Oneida county, March 1, 1901, in the matter of assessing a transfer tax in above estate, wherein it was held that a legacy of $500 bequeathed by the will of decedent to the Young Men's Christian Association of Rome, N. Y., and a legacy of $2,000 to the Missionary Society of the Methodist Episcopal Church were exempt from the transfer tax. Said legatees are corporations created under the laws of this state. Testatrix died September 12, 1900, being at the time of her death a resident of the city of Rome, N. Y.

By chapter 908 of the Laws of 1896, the tax laws of the state were consolidated into one act, consisting of 12 articles, and known as the "Tax Law." The tenth article refers to. taxable transfers. Section 220 of said article, among other things, provides that where property is transferred by the. provisions of a will, a tax of 5 per cent. shall be imposed "upon the transfer of any property, real or personal, of the value of five hundred dollars or over, or of any interest therein, or income therefrom, in trust or otherwise, to persons or corporations not exempt by law from taxation on real or personal property." Section 4, subdivision 7, of said law designates, among other things, the religious and other corporations whose real and personal property is exempt from a general tax. By the above provisions said two corporations have been exempt from general taxation, and from the operation of the transfer tax act. That privilege existed until 1900, when the legislature in that year enacted an amendment to article 10, known as section 2 of chapter 382, as follows:

"Section 2, art. 10, of such chapter is hereby amended by adding a section to be section 243 to read as follows: 'Section 243. Exemptions in article 1 not applicable.—The exemptions enumerated in section 4 of the tax law, of which this article is a part, shall not be construed as being applicable in any manner to the provisions of article 10 hereof.'"

Applying said amendment to the provisions of section 4 of the tax law, it must be held that the privilege of exemption from the transfer tax heretofore accorded said corporations was taken away, and unless said corporations can bring themselves within section 221 of article 10 of said law, which refers to exemptions from said transfer tax, the legacies given them by testatrix herein should be taxed at five per centum. That part of section 221 necessary here to refer to is as follows:

"But any property heretofore or hereafter devised or bequeathed * * * to any religious corporation * * * shall be exempted from and not subject to the provisions of this act."

It was the intent of the legislature to impose a tax, in the cases prescribed in said act, upon the transfer of property to all corporations except those of a religious character and those specifically exempted by statute from said taxation. No statute has been enacted which grants the two corporations above referred to any exemptions except of a general nature. The only question, therefore, to be determined here, is whether said Young Men's Christian Association of Rome, N. Y., and the Missionary Society of the Meth-

odist Episcopal Church are religious corporations, and for that reason are free from the operation of the statute in reference to taxable transfers. The exemptions are not limited to any particular class, or restricted to corporations organized solely for public worship, but exempts any property devised to any religious corporation. "A religious corporation is a corporation created for religious purposes." Laws 1895, c. 723, art. 1, § 2. That definition is somewhat general in its nature, but to be within its terms it is sufficient if the sole or primary work of the corporation is of a religious character. The Young Men's Christian Association of Rome, N. Y., was organized pursuant to chapter 501 of the Laws of 1887, having for its object "the improvement of the spiritual, mental, social, and physical condition of young men." It owns a building in said city, of the value of about $8,000, upon which there is mortgage of about $7,000. In said building are two stores, which are rented by said association, and from which revenue is derived. It has a gymnasium, library, lecture room and reading room. Religious meetings are held, and Bible classes are taught. Certain privileges are granted to members, for which dues are received, and public entertainments are given, to which admission is charged. To some extent, inducements of the character of those above referred to are employed by churches where public worship is held. Revenue must be derived to meet the necessary financial obligations. Pews are rented, articles are sold at gatherings of a social nature, but these are only incident to the main work of the church. It cannot be said that they detract from its real standing as a religious corporation. The association here under discussion employs its various means to attract young men, eligible to membership, to surround them with Christian influences and to elevate their spiritual condition. To hold said association to be a religious corporation is, in my judgment, a proper conclusion.

The Missionary Society of the Methodist Episcopal Church was created by chapter 136, Laws 1839, and the several acts passed in reference to said society were consolidated by chapter 175 of the Laws of 1873. Its object, as described in said charter, "are charitable and religious; designed to diffuse more generally the blessings of education and Christianity, and to promote and support missionary schools and Christian missions throughout tht United States and territories, and also in foreign countries." The management of its affairs and property is vested in a board of managers, composed of bishops, laymen, and ministers of the Methodist Episcopal Church and appointed by the general conference of said church. It is apparent that its work is almost entirely of a religious nature. It was organized to promote religious teachings, and whatever charitable work is done is simply to aid the diffusion of religious knowledge. Throughout the United States and foreign countries it establishes such institutions of religion, and maintains religious work in such places, as its proper officials deem best. What revenue is derived is apparently expended for the accomplishment of its main object. Missionary work of the character this society performs certainly brings it within the definition which the statute prescribes as a

religious corporation. The transfer tax is a special and not a general one, and in imposing said tax the statute should be liberally construed in favor of the taxpayer.

The order heretofore entered should be confirmed, and the legacies to the two corporations above mentioned should be held exempt from a transfer tax. The usual order may therefore be entered, without costs.

Order affirmed, without costs.